IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 4:13-CR-00219 |
| | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| AMY JENKINS | : | |
| | : | |

**MEMORANDUM**

November 3, 2016

Before the Court for disposition is Petitioner's March 22, 2016 Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.[1] For the reasons that follow, Petitioner's Motion is denied.

## I. Background and Procedural History

On October 10, 2013, a federal grand jury charged Amy Jenkins, hereinafter "Petitioner," with an eight-count indictment of fraud in connection with access devices, theft of mail, possession of stolen mail matter, and fraud with identification documents. On March 19, 2014, Jenkins pled guilty to counts two and seven, which charged her with "theft of stolen mail matter generally" in violation of 18 U.S.C. § 1708, and fraud in connection with access devices in

---

[1] ECF No. 124.

violation of 18 U.S.C § 1029(a)(3), respectively.[2] On May 19, 2014, the Court

released Petitioner, on her own recognizance with certain conditions, pending

sentencing.

On June 28, 2014, the Susquehanna Township Police Department, Dauphin

County, Pennsylvania charged Petitioner of criminal attempt and criminal

conspiracy after an incident that occurred at a Unimart.[3] The following day, June

29, 2014, the Lower Allen Township Police Department, Cumberland County,

Pennsylvania charged Petitioner with identity theft and theft by deception- false

impression that occurred at a Sears Department Store.[4] The charges filed against

Petitioner were supported by state criminal complaints and affidavits and

corroborated by Unimart surveillance photographs and Sears surveillance videos.

In light of these charges, this Court issued an arrest warrant in this case.

On September 3, 2014, this Court held a revocation hearing, revoked bail, and

ordered that Petitioner be detained pending sentencing.[5] On November 19, 2014,

the state charges were dismissed. On December 17, 2014, this Court sentenced

---

[2] ECF No. 39.
[3] ECF 130-1 p. 113-119.
[4] ECF 130-1 p. 104-112.
[5] ECF No. 89.

Petitioner to concurrent prison terms of 36 months on each count and a two-year term of supervised release.[6] Petitioner timely appealed.[7]

## II. Discussion

### A. Legal Standard

Under 28 U.S.C § 2255(a), a prisoner may move the sentencing court to vacate, set aside, or correct the sentence when (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose such sentence, or (3) the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack.[8] Section 2255 does not, however, afford a remedy for all errors that may have been made at trial or sentencing.[9] Rather, in order to be afforded a remedy under §2255, the movant must identify an error which "inherently results in a complete miscarriage of justice." Id. To direct a court to such an error, movant must file a §2255 motion within one year from the time his conviction becomes final.[10] Where the movant

---

[6] ECF No. 110.
[7] ECF No. 113.
[8] 28 U.S.C. § 2255(a).
[9] . United States v. Essig, 10 F.3d 968, 977 n. 25 (3d Cir. 1993)(citing United States v. Addonizio, 442 U.S. 178 (1979))
[10] 28 U.S.C. § 2244.

has not filed a direct appeal to the relevant court of appeals, the judgment of conviction becomes final ten (10) days following entry of the judgment.[11]

In evaluating a §2255 motion, the district court must accept as true all non-frivolous allegations made by the movant.[12] Furthermore, in making its final determination, the district court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief."[13] Therefore, where the record affirmatively indicates that a movant's claim for relief is without merit, the disposition of a petitioner's motion without hearing would not be an abuse of discretion.[14]

*B. Analysis*

Petitioner sets forth three arguments. First, Petitioner asserts in her § 2255 Motion that she "should be given credit for taking responsibility" on the basis that she pled guilty to her charges.[15] This Court determined that an adjustment for acceptance of responsibility was not warranted considering the detailed criminal complaints and probable cause linking Petitioner to two sets of state theft and fraud

---

[11] Kapral v. United States, 166 F.3d 565, 577 (3d. Cir. 1999); see also FED. R. APP. P. 4(b)(1)(A).

[12] United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015)(citing United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005)).

[13] Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).

[14] See Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985)(citing Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972)).

[15] ECF No. 124 p. 5.

offenses while on release pending sentencing in this matter. The United States Court of Appeals for the Third Circuit affirmed this Court's sentence in *United States v. Jenkins,* 630 Fed.Appx. 153 (3d Cir. 2015), holding that this Court "did not err in denying Jenkins a sentence reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines."

This finding was entirely consistent with Third Circuit precedent. In *United States v. Ceccarani*, the Third Circuit found that "[a] guilty plea in acceptance of responsibility may be outweighed by conduct that is inconsistent with such acceptance."[16] In *Ceccarani,* the defendant pled guilty to theft from a federal firearms licensee, and was released on bond under the conditions that he not commit any federal, state, or local offense and submit to drug testing and treatment as directed by the Probation Office.[17] The defendant tested positive for the presence of marijuana five times while on pre-trial release. The defendant was then evaluated and recommended for outpatient treatment, which he refused to attend.[18] At the sentencing hearing, the district judge denied the defendant any reduction for acceptance of responsibility due to his conduct while on pre-trial release.[19] The Third Circuit held that the positive drug tests and failure to participate in the drug

---

[16] United States v. Ceccarani, 98 F.3d 126, 130 (3d Cir. 1996).
[17] Id. at 128
[18] Id.
[19] Id.

5

rehabilitation program were properly considered by the district court in determining an acceptance of responsibility reduction.[20]

The Third Circuit reasoned that, under Section 3E1.1(a) of the Sentencing Guidelines, "voluntary termination or withdrawal from criminal conduct or associations" is a relevant factor which may be considered in determining whether the defendant has accepted responsibility. The court noted that "a guilty plea in acceptance of responsibility may be outweighed by conduct that is inconsistent with such acceptance" and that continual criminal activity "is inconsistent with an acceptance of responsibility and an interest in rehabilitation."[21]

In *United States v. Warren*, the Third Circuit made clear that while background, character and conduct of a defendant may be referenced when sentencing a defendant, only "reliable information" is to be considered by a district court.[22] When information is used as a basis for sentencing a defendant, it must have "sufficient indicia of reliability to support its probably accuracy."[23] In *Warren*, the Third Circuit held that the district court erred in relying entirely upon one paragraph of the presentencing report which was "equivocal," "not attributed or

---

[20] Id.
[21] Id. at 130.
[22] United States v. Warren, 186 F.3d 358, 364-65 (3d Cir. 1999).

[23] Id. at 365.

sworn," constituted hearsay, and was corroborated by no other evidence.[24] The *Warren* court reasoned that "[t]here should be some offer of proof or evidence to accompany [a] statement before it may form the basis for an upward departure."[25]

Similarly, in *United States v. Berry*, the Third Circuit held that the district court erred when it relied upon a bare arrest record to support increasing the defendant's sentence. In *Berry*, the defendants had previously been arrested for possession of marijuana, but were not prosecuted.[26] The district court considered this history, and erroneously stated that the defendants also had escaped prosecution on a local robbery charge, but in fact that was the same robbery charge currently before the court. The district court stated that it was "rather obvious that… he doesn't have any actual adult convictions… because of the breakdown in the court- in the state court system- and not because of innocence" and reasoned it was likely that "the prosecution was dropped because nobody showed up to prosecute or something like that."[27] The Third Circuit held that such speculation was not adequate to warrant an upward departure from the sentencing guidelines. Importantly, the Third Circuit noted that consideration of the underlying conduct of an arrest is permitted where "reliable evidence of that conduct is proffered."[28] The court went

---

[24] Id.
[25] Id.
[26] United States v. Berry, 553 F.3d 273, 277 (3d Cir. 2009).
[27] Id. at 276.
[28] Id. at 284.

on to say that "the Supreme Court has held that facts that are considered at sentencing, as a general matter, must be proved by a preponderance of the evidence."[29]

In the matter at hand, I relied upon highly credible information including criminal complaints and affidavits of probable cause. This case is distinguishable from *Berry* and *Warren* because the information I relied upon was supported by a preponderance of the evidence. Specifically, an officer of the Lower Allen Township Police Department submitted a criminal complaint and affidavit of probable cause regarding the identity theft and theft by deception charges that were filed as a result of Jenkins actions at the Sears store. In the affidavit of probable cause, the officer notes that he sent still pictures taken from Sears security footage during the incident to Jenkins' probation officer; she identified the female as Jenkins.[30]

Furthermore, an officer of the Susquehanna Township Police Department submitted a criminal complaint and affidavit of probable cause for charges of criminal attempt and criminal conspiracy in regard to the incident that occurred at the Unimart. In the affidavit of probable cause, the officer notes that the Unimart manager who engaged with Jenkins picked her out of a line up including seven

---

[29] Id. at 279.
[30] ECF 130-1 p. 109.

other like females "without hesitation."[31] The officer reports the manager stated that "Jenkins was positively the female that assisted Correa in an attempt to obtain to return an unactivated $100 Visa card on June 26, 2014."[32] At a hearing on December 12, 2014, the federal prosecutor informed the Court that he spoke with the state prosecutor who handled these charges. He relayed that the state prosecutor indicated that there had been sufficient evidence to prosecute Jenkins on those charges, but the charges were dropped because her co-defendant, who was viewed as the more culpable participant, had entered a guilty plea, and because Jenkins was facing sentencing on the more serious federal mail fraud charge. All of the evidence presented to the Court for consideration met or exceeded the preponderance of the evidence standard.

In a related argument, Petitioner asserts that her "sentencing guidelines were too high" because she "was sentenced as if [she] was convicted of new charges but in fact those charges were dismissed."[33] However, the state criminal charges Petitioner references were not considered or included during calculation of the sentencing guidelines. The only effect of these charges on the sentencing guidelines was the Court's finding that Petitioner did not qualify for a reduction in offense level due to her acceptance of responsibility, since Petitioner had not

---

[31] ECCF No. 130-1 p. 117.
[32] Id.
[33] ECF No. 124 p. 5.

voluntarily withdrawn from criminal conduct or associations. As such, Jenkins'
request that she receive credit for pleading guilty is not warranted.

Second, Petitioner asserts in her motion that her "psychological health was
ignored."[34] At Jenkins' sentencing hearing and in her sentencing brief, Plaintiff's
counsel, D. Toni Byrd, Esquire, exhaustively presented the relevant information
concerning Jenkins' mental health issues.[35] Attorney Byrd described the reports of
a professional psychologist and a psychiatrist who opined extensively as to
Petitioner's mental health status, and the Court noted during sentencing that
Petitioner had been diagnosed with mood disorder- not otherwise specified, panic
attack with agoraphobia, a history of bipolar disorder, and a history of ADHD.

Petitioner's counsel asserted that a downward departure was warranted under
U.S.S.G. Sections 5H1.3 and 5H1.4 on the basis that Petitioner's "mental and
emotional health conditions and her physical health conditions are present to an
unusual degree and distinguish her case from the typical cases covered by the
guidelines."[36] In her sentencing brief, Petitioner's counsel argued that it will be
difficult for Petitioner to obtain mental illness treatment in prison, and reiterated
that Petitioner "is a sick woman." During oral argument on this issue, Petitioner's
counsel noted that she suffers from migraine headaches, might have multiple

---

[34] ECF No. 124 p. 5.
[35] ECF No. 118, ECF No. 95.
[36] ECF No. 95 p. 22-23.

sclerosis, believes she suffers from an abscess in one of her wisdom teeth, and believes she has a mass in her abdomen.[37] The Court took these concerns into consideration and found that they did not render the defendant afflicted to such an unusual degree that departure based on these grounds was warranted. This finding was made considering the "substantial discretion" afforded to district courts "in deciding whether to depart from the Guideline range."[38]

Petitioner's counsel next presented evidence regarding the statements of a psychiatrist and a psychologist who opined that Jenkins suffers from bipolar disorder and that "she was in a manic episode during the commission of the offense."[39] Attorney Byrd argued that, as a result, Jenkins was entitled to a downward departure pursuant to U.S.S.G. 5K2.13.[40] U.S.S.G. 5K2.13 provides that: "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense."[41]

After careful consideration, the Court found that a downward departure was also not warranted here. The Court agreed with the reasoning of the United States

---

[37] ECF No. 118 p. 11.
[38] (*United States v. Cotto*, 793 F. Supp. 64 (E.D.N.Y. 1992)) (citing *See United States v. Sturgis,* 869 F.2d 54, 57 (2d Cir.1989); *United States v. Correa–Vargas,* 860 F.2d 35, 40 (2d Cir.1988).
[39] ECF No. 118 p. 13.
[40] Id.
[41] U.S.S.G. 5K2.13.

Attorney, who asserted that Jenkins' mental condition did not appear to significantly contribute to her commission of the offense.[42] While the Court did not doubt that Petitioner does in fact suffer from mental illness, the Court reasoned that Petitioner was highly functioning and had engaged in high levels of planning, concentration, organization and deliberation while carrying out the fraudulent schemes.[43]

The United States Court of Appeals for the Seventh Circuit faced a similar case in *United States v. Dyer*. In *Dyer*, the defendant was convicted of mail fraud and related federal crimes arising of his operation of a five year scheme, and was sentenced to seventy months in prison.[44] The defendant appealed, challenging the district judge's refusal to give him a departure based on section 5K2.13 of the federal sentencing guidelines. The defendant asserted that the district court erred by failing to determine how far his manic depression and frequent manic episodes "contributed" to the crime.[45] The Seventh Circuit held that the district judge committed no legal error in refusing to depart downward.[46] The Seventh Circuit noted that the district judge properly reasoned that considering "the length of time over which Dyer conducted his Ponzi scheme, the elaborate planning that went into

---

[42] ECF No. 118 p. 19-20
[43] ECF No. 118 p. 22.
[44] United States v. Dyer, 216 F.3d 568, 569 (7th Cir. 2000).

[45] Id.
[46] Id. at 571.

it, and the purely episodic character of his manic fits," his mental illness was not a necessary condition of his criminal activity. Importantly, the Seventh Circuit noted that "[t]he guideline is permissive rather than mandatory," and that even if the district judge had found the defendant's mental capacity significantly contributed to the commission of the offense, he was merely authorized, but not required, to grant a downward departure.[47]

The Court also considered the reference in the record to the fact that Jenkins is an abuser of addictive prescription drugs and painkillers, information which was corroborated by Jenkins' parents. I reasoned that "a diminished capacity departure does not seem authorized here when voluntary use of drugs contributed to the diminished capacity."[48]

Third, Petitioner argues that the Court failed to properly compute her criminal history points, and that the Court's calculation was too high.[49] I have now reviewed the Presentence Investigation Report in this case once again, and find that it contains no error.[50] In the report, Petitioner's criminal history score of six and category of three were properly computed. Petitioner suggests that her criminal

---

[47] Id. at 569.
[48] ECF No. 118 p. 22 *See United States v. Amos,* 215 F. App'x 769, 771 (10th Cir. 2007) (holding that the district court did not err in deciding not to depart below the guideline range where there was no evidence that defendant's bipolar disorder, rather than his voluntary drug use, contributed substantially to the commission of the offense).
[49] ECF No. 124 p. 5.
[50] ECF No. 104.

history points were excessive, stating that "quite a few of my points were fines for my son missing school."[51] However, this statement is inaccurate; only three out of Petitioner's twenty-five compulsory attendance offenses were included in the calculations.

## III. Certificate of Appealability

Following the disposition of a Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C § 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") is issued. Under 28 U.S.C. § 2253(c)(2), a district court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." A COA should, therefore, not be issued unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[52] I do not find that Petitioner has met this threshold; therefore, a Certificate of Appealability will not issue.

## IV. Conclusion

Based on the foregoing reasoning, the Court concludes that Petitioner has failed to state any claims in her §2255 petition that merit relief.

---

[51] ECF No. 124 p 5.
[52] Slack v. McDaniel, 529 U.S. 437, 484 (2000).

An appropriate Order follows.

BY THE COURT:


<u>/s Matthew W. Brann</u>
Matthew W. Brann
United States District Judge